UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT BENYAMINI,<br><br>    Plaintiff,<br><br>    v.<br><br>O'BRIAN, et al.,<br><br>    Defendants. | No. 2:11-cv-2317 TLN AC P<br><br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a former state prisoner proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C § 1983. This action is proceeding on the first amended complaint. ECF No. 25. The court currently has before it the defendants' fully briefed motion for summary judgment.[1] ECF No. 74.

I. Procedural History

On August 25, 2011,[2] plaintiff filed a complaint alleging, in pertinent part, that he was placed in administrative segregation from July 31, 2007 to September 2, 2007, and denied

---

[1] The court notes that plaintiff filed his opposition twice. ECF Nos. 85, 88. The documents appear to be identical and the court will refer only to the first filed opposition.
[2] Because plaintiff is proceeding pro se, he is afforded the benefit of the prison mailbox rule for those documents filed while he was still incarcerated. See Houston v. Lack, 487 U.S. 266, 276 (1988).

1

1   outdoor exercise during that time. ECF No. 1. On October, 16, 2012,[3] the Clerk of the Court
2   updated plaintiff's address, based on a notice of change of address filed in another case. ECF No.
3   22. The new address reflected that plaintiff had been released from prison. Id. The complaint
4   was screened on January 18, 2013, and dismissed with leave to amend. ECF No. 24. Plaintiff
5   filed a first amended complaint on February 15, 2013. ECF No. 25. Service was ordered on
6   defendants Anderson, Bauer, Hanson, Howe, Juan, Leiber, Lopez, Hammer, O'Brian, Reid,
7   Reynolds, and Walker. ECF No. 27. Defendants Anderson, Juan, Lopez, and Reid were later
8   dismissed for failure to timely effect service of process and follow court orders. ECF Nos. 55, 60.
9   Findings and Recommendations to dismiss defendant Howe on the same grounds are currently
10  pending. ECF No. 94.

11      Defendants Bauer, Hanson, Leiber, Hammer, O'Brian, Reynolds, and Walker filed an
12  answer to the complaint. ECF No. 56. A schedule for discovery and pretrial motions was set
13  (ECF No. 58) and later modified (ECF No. 72). Prior to the close of the modified discovery and
14  pretrial motion deadlines, defendants filed their motion for summary judgment for failure to
15  exhaust administrative remedies. ECF No. 74. Defendants subsequently moved to re-set the
16  discovery and pretrial motion deadlines to after disposition of their summary-judgment motion.
17  ECF No. 77. The motion was granted and the deadlines were vacated, to be re-set, if necessary,
18  after disposition of the motion for summary judgment. ECF No. 80.

19      II.     Plaintiff's Allegations

20      This case proceeds on the first amended complaint. Plaintiff alleges that he was placed in
21  administrative segregation at California State Prison (CSP)-Sacramento[4] from July 30, 2007 to
22  September 2, 2007, and that during that time defendants Bauer, Hanson, Leiber, Hammer,
23  O'Brian, Reynolds, and Walker denied him outdoor exercise or refused to move him to a location
24  where he could have outdoor exercise even though he is claustrophobic and began deteriorating
25  mentally. ECF No. 25. He also alleges that he filed numerous grievances related to the denial of

---

[3] Plaintiff is not entitled to the benefit of the prison mailbox rule after this date because he was released from prison.
[4] Plaintiff sometimes refers to the prison as "New Folsom."

2

1  outdoor exercise and the effect it was having on his mental state, and that defendant O'Brian
2  improperly refused to process these grievances in retaliation for a lawsuit he had brought against
3  a Lt. O'Brian.[5] Id. at 4.

4      III.    <u>Legal Standards for Summary Judgment</u>

5  Summary judgment is appropriate when the moving party "shows that there is no genuine
6  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
7  Civ. P. 56(a).

8  Under summary judgment practice, "[t]he moving party initially bears the burden of
9  proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d
10 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving
11 party may accomplish this by "citing to particular parts of materials in the record, including
12 depositions, documents, electronically stored information, affidavits or declarations, stipulations
13 (including those made for purposes of the motion only), admission, interrogatory answers, or
14 other materials" or by showing that such materials "do not establish the absence or presence of a
15 genuine dispute, or that the adverse party cannot produce admissible evidence to support the
16 fact." Fed. R. Civ. P. 56(c)(1)(A), (B). "Where the non-moving party bears the burden of proof
17 at trial, the moving party need only prove that there is an absence of evidence to support the non-
18 moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also
19 Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time
20 for discovery and upon motion, against a party who fails to make a showing sufficient to establish
21 the existence of an element essential to that party's case, and on which that party will bear the
22 burden of proof at trial." See Celotex, 477 U.S. at 322. "[A] complete failure of proof
23 concerning an essential element of the nonmoving party's case necessarily renders all other facts
24 immaterial." Id. at 323. In such a circumstance, summary judgment should be granted, "so long
25 as whatever is before the district court demonstrates that the standard for entry of summary

---

[5] Though it is not entirely clear, it appears that Lt. O'Brian is a different person than defendant O'Brian.

3

1    judgment, as set forth in Rule 56(c), is satisfied." Id.

2    If the moving party meets its initial responsibility, the burden then shifts to the opposing
3    party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
4    Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish
5    the existence of this factual dispute, the opposing party may not rely upon the allegations or
6    denials of its pleadings but is required to tender evidence of specific facts in the form of
7    affidavits, and/or admissible discovery material, in support of its contention that the dispute
8    exists.  See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must
9    demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the
10   suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W.
11   Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the
12   dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the
13   nonmoving party," Anderson, 447 U.S. at 248.

14   In the endeavor to establish the existence of a factual dispute, the opposing party need not
15   establish a material issue of fact conclusively in its favor.  It is sufficient that "'the claimed
16   factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the
17   truth at trial.'"  T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities
18   Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the "purpose of summary judgment is to pierce the
19   pleadings and to assess the proof in order to see whether there is a genuine need for trial."
20   Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

21   "In evaluating the evidence to determine whether there is a genuine issue of fact," the
22   court draws "all inferences supported by the evidence in favor of the non-moving party." Walls
23   v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's
24   obligation to produce a factual predicate from which the inference may be drawn. See Richards
25   v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine
26   issue, the opposing party "must do more than simply show that there is some metaphysical doubt
27   as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record
28   taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

4

1   'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

2        On February 27, 2015, defendants served plaintiff with notice of the requirements for
3   opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 74-1.
4   See Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952,
5   960 (9th Cir. 1998) (movant may provide notice) (en banc), cert. denied, 527 U.S. 1035 (1999).

6   IV.     Defendants' Motion for Summary Judgment

7        Defendants move for summary judgment on the ground that plaintiff failed to exhaust his
8   administrative remedies prior to bringing suit as required by the Prison Litigation Reform Act, 42
9   U.S.C. § 1997e(a).  ECF No. 74.

10        A.     Legal Standards for Exhaustion
11             1. Prison Litigation Reform Act

12        Because plaintiff was a prisoner suing over the conditions of his confinement at the time
13   he initiated this lawsuit, his claims are subject to the Prison Litigation Reform Act ("PLRA"), 42
14   U.S.C. § 1997e(a).  See Talamantes v. Leyva, 575 F.3d 1021, 1024 (9th Cir. 2009) (only
15   individuals who are prisoners at the time suit is filed must comply with exhaustion requirements);
16   see also Norton v. City of Marietta, 432 F.3d 1145, 1150 (10th Cir. 2005) (per curiam) ("[I]t is
17   the plaintiff's status at the time he files suit that determines whether § 1997e(a)'s exhaustion
18   provision applies").  Under the PLRA, "[n]o action shall be brought with respect to prison
19   conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any
20   jail, prison, or other correctional facility until such administrative remedies as are available are
21   exhausted."  42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s
22   exhaustion requirement applies to all prisoners seeking redress for prison circumstances or
23   occurrences").  "The PLRA mandates that inmates exhaust all available administrative remedies
24   before filing 'any suit challenging prison conditions,' including, but not limited to, suits under
25   § 1983."  Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (quoting Woodford v. Ngo, 548
26   U.S. 81, 85 (2006)).

27        Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones
28   v. Bock, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there was an

1  available administrative remedy, and that the prisoner did not exhaust that available remedy."

2  Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir.

3  1996)). "[T]here can be no 'absence of exhaustion' unless *some* relief remains 'available.'"

4  Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in original). Therefore, the

5  defendant must produce evidence showing that a remedy is available "as a practical matter," that

6  is, it must be "capable of use; at hand." Albino, 747 F.3d at 1171 (citations and internal

7  quotations marks omitted). Once the defendant has carried his burden, the burden shifts to

8  plaintiff to provide evidence that administrative remedies were unavailable to him. Id. at 1172.

9  "However, . . . the ultimate burden of proof remains with the defendant." Id.

10  In reviewing the evidence, the court will consider, among other things, "information

11  provided to the prisoner concerning the operation of the grievance procedure." Brown, 422 F.3d

12  at 937. Such evidence "informs our determination of whether relief was, as a practical matter,

13  'available.'" Id. Thus, misleading—or blatantly incorrect—instructions from prison officials on

14  how to exhaust the appeal, especially when the instructions prevent exhaustion, can also excuse

15  the prisoner's exhaustion:

> We have considered in several PLRA cases whether an administrative remedy was "available." In Nunez v. Duncan, 591 F.3d 1217 (9th Cir. 2010), we held that where a prison warden incorrectly implied that an inmate needed access to a nearly unobtainable prison policy in order to bring a timely administrative appeal, "the Warden's mistake rendered Nunez's administrative remedies effectively unavailable." Id. at 1226. In Sapp v. Kimbrell, 623 F.3d 813 (9th Cir. 2010), we held that where prison officials declined to reach the merits of a particular grievance "for reasons inconsistent with or unsupported by applicable regulations," administrative remedies were "effectively unavailable." Id. at 823-24. In Marella v. Terhune, 568 F.3d 1024 (9th Cir. 2009) (per curiam), we reversed a district court's dismissal of a PLRA case for failure to exhaust because the inmate did not have access to the necessary grievance forms within the prison's time limits for filing a grievance. Id. at 1027-28. We also noted that Marella was not required to exhaust a remedy that he had been reliably informed was not available to him. Id. at 1027.

26  Albino, 747 F.3d at 1173. When the district court concludes that the prisoner has not exhausted

27  administrative remedies on a claim, "the proper remedy is dismissal of the claim without

28  prejudice." Wyatt v. Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003), overruled on other grounds

by Albino, 747 F.3d at 1168.

### 2. California Regulations Governing "Exhaustion" of Administrative Remedies

Exhaustion requires that the prisoner complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. This review process is set forth in California regulations. In 2007, those regulations allowed prisoners to "appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (Barclays, Westlaw through Register 2007, No. 52).[6] An inmate was required to "submit the appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision." Id., § 3084.6(c). The appeal process was initiated by the inmate filing a "Form 602," the "Inmate/Parolee Appeal Form," "to describe the problem and action requested." Id., § 3084.2(a). Each prison was required to have an "appeals coordinator" whose job was to "screen and categorize each appeal originating in their area for compliance with these regulations" prior to acceptance for review. Id. § 3084.3(a).

The appeals coordinator could refuse to accept an appeal by "rejecting" it. Id. § 3084.3(c) An appeal could be "rejected" for any of the following reasons: (1) the action or decision was outside the department's jurisdiction; (2) the appeal duplicated a previous appeal upon which a decision has been rendered or was pending; (3) the appeal concerned an anticipated action or decision; (4) evidence of attempted informal resolution was not attached and informal resolution was not waived; (5) supporting documentation was not attached; (6) the appeal was submitted outside the prescribed timeframe and there was an opportunity to timely file; (7) the appeal was filed on behalf of another inmate; and (8) the appeal constituted an abuse of the appeal process. Id. Whenever an appeal was "rejected," the appeals coordinator was required to "provide clear instructions regarding further action the inmate must take to qualify the appeal for processing." Id., § 3084.3(d).

////

---

[6] All California Code of Regulations citations are to the same version.

7

If the appeals coordinator allowed an appeal to go forward, the administrative remedies were not concluded until the inmate received a decision at the director's level. Id., § 3084.1(a) ("decisions of the Departmental Review Board which serve as the director's level decision, are not appealable and conclude the inmate's . . . departmental administrative remedy").

### B. Arguments of the Parties

#### 1. Defendant

Defendant has submitted evidence which he argues shows that plaintiff did not exhaust his administrative remedies prior to filing this lawsuit. ECF No. 74-3.

#### 2. Plaintiff

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Plaintiff has also failed to file a separate document disputing defendants' statement of undisputed facts, as required by Local Rule 260(b).

However, it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc). Accordingly, the court will consider the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However, only those assertions in the opposition which have evidentiary support will be considered.

In his opposition, plaintiff does not appear to dispute that he did not appeal any grievances to the director's level, but instead argues that his numerous attempts to exhaust the grievance process were thwarted by the appeals coordinator, rendering the grievance process unavailable. ECF No. 85.

### C. Discussion

There is no dispute that a grievance process existed at CSP-Sacramento during the

relevant time period. Defendants' Undisputed Statement of Facts (DSUF) [ECF No. 74-2], ¶ 3; ECF No. 85 at 2; ECF No. 85-1 at 2, ¶ 5. Plaintiff also does not dispute that he did not complete a grievance at the director's level for the claims presented in this lawsuit. ECF No. 25 at 2; DSUF ¶ 4; ECF No. 85 at 2; ECF No. 85-1 at 2, ¶ 5. Instead, plaintiff alleges that the appeals coordinator refused to process the majority of his appeals because of his ethnicity and as retaliation for a lawsuit plaintiff filed against another officer. ECF No. 25 at 4; ECF No. 85 at 2; ECF No. 85-1 at 2, ¶ 6.

Since it is undisputed that there was a grievance process in place and that plaintiff did not complete a grievance at the director's level, the question becomes whether the grievance process was rendered unavailable to plaintiff. Defendants have submitted logs showing that plaintiff submitted two appeals related to living conditions that were received sometime between August 3, 2007 and September 27, 2007. DSUF ¶¶ 11, 13. Because the appeals were screened out, there is no record of when they were actually submitted. DSUF ¶¶ 8-9. There is also apparently no record of why they were screened out, or what they were related to other than the broad topic of "living conditions" (ECF No. 74-4 at 13). Neither party has submitted copies of the appeals or the screen-out forms for the court to review.

This case is factually similar to Williams v. Paramo, 775 F.3d 1182 (9th Cir. 2015). Like plaintiff in this case, the plaintiff in Williams alleged in her verified complaint that she had attempted to file a grievance but that it was rejected and the officer refused to file the appeal. Williams, 775 F.3d at 1191-92. The Ninth Circuit found that the plaintiff's sworn statements were enough to meet her burden of showing administrative remedies were unavailable. Id. In order to rebut plaintiff's claims, the defendants in Williams produced evidence similar to the evidence provided by defendants in this case,[7] and the Ninth Circuit found that

---

[7] The defendants in Williams produced two declarations, one from the appeals coordinator and one from the chief of the office of appeals. 775 F.3d at 1186. The declaration from the appeals coordinator stated that a search of the plaintiff's previous appeals did not turn up an appeal related to the complaint. Id. The declaration from the chief of the office of appeals stated that none of the plaintiff's third-level appeals dealt with the issues in the complaint. Id.

9

> [t]he evidence produced by the Defendants at most meets their burden of demonstrating a system of available administrative remedies at the initial step of the Albino burden-shifting inquiry, but Defendants have not carried their ultimate burden of proof in light of Williams's factual allegations. The evidence submitted by Defendants generally outlines the procedure for filing a formal complaint, but it does not rebut Williams's evidence [in the form of sworn statements] that administrative remedies were not available to her because her filings were rejected by prison officials. Nor do Defendants provide evidence that Williams failed to follow prison procedures by attempting to file her grievance and appeal with Officers Cobb and Paramo.

Id. at 1192. The log submitted by defendants in this case is sufficient to establish only that plaintiff submitted two appeals related to his living conditions during the relevant time period and that they were not processed. See ECF No. 74-5 at 39. Defendants argue in summary fashion that because these appeals were screened out, they do not exhaust plaintiff's administrative remedies. ECF No. 74-3 at 6. However, the evidence provided by defendants does not show why the appeals were screened out, let alone that they were properly rejected. On the sparse record presented to the court, it cannot find that defendants have met their burden to show that administrative remedies were available to plaintiff.

IV.    Conclusion

For the reasons set forth above, defendants have not met their burden of proof and the motion for summary judgment should be denied without prejudice. New deadlines for completing discovery and filing pretrial motions will be set after adoption of the findings and recommendations.

IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment (ECF No. 74) be denied without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 28, 2015

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE